UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MITCHELL D. GREEN,

           Petitioner,

v.                                 Case No. 24-CV-295

MILWAUKEE COUNTY CIRCUIT COURT,

           Respondent.

---

DECISION AND ORDER

---

**1. Background**

Mitchell D. Green is on bond awaiting retrial on charges related to the sex-trafficking of a child. *See State v. Green*, Wis. Cir. Ct. Access, Milwaukee Cnty Cir. Ct. Case No. 2019CF000914 (available at https://wcca.wicourts.gov). At his first trial, SB testified that she was sex trafficked by Kimeo Conley. (ECF No. 10-17 at 67.) She testified that Green, whom she knew as Money Mitch, assisted Conley in sex trafficking, including by driving her to a "date." (ECF No. 10-17 at 68-70.)

Before trial, Green filed a witness list that included Green's cousin, aptly named Jonathan Cousin. *State v. Green*, 2023 WI 57, ¶5, 408 Wis. 2d 248, 992 N.W.2d 56. The state filed a pretrial motion in limine in which it sought an order precluding Green

"from introducing any other-acts evidence involving a third-party perpetrator, unless and until defendant satisfies his burden and such evidence is ruled admissible by the court" unless the evidence was previously ruled admissible by the court. *Id*. Although Green did not oppose the motion, apparently the circuit court never ruled on it. *Id*.

The morning the trial was scheduled to begin, the judge before whom the case was pending "spun" the case to another judge due to a scheduling conflict. *Green*, 2023 WI 57, ¶6 and fn. 2. On the first day of trial SB testified that Green drove her to a prostitution date in downtown Milwaukee. (ECF No. 10-17 at 68-70.) Although she did not remember specifically when that date occurred, she recalled it because the man she met spat in her mouth. (ECF No. 10-17 at 70.)

Green called Cousin in his defense. (ECF No. 10-18 at 79-80.) Cousin testified that he, not Green, drove SB to the date, although he had no idea at the time that SB was involved in prostitution. (ECF No. 10-18 at 85-88, 91-92.) Cousin testified that Conley's younger brother, Delmar White, asked him for a ride, which was common because White did not own a car. (ECF No. 10-18 at 84.) Cousin agreed, provided he was paid for gas. (ECF No. 10-18 at 85.) When Cousin arrived to pick up White, SB (who Cousin did not know) and another man came along. (ECF No. 10-18 at 85-86.) Cousin drove the three of them to downtown Milwaukee. (ECF No. 10-18 at 86-87.) SB and the other man got out of the car, while Cousin and White waited for about 15 minutes before the two returned and they drove home. (ECF No. 10-18 at 86-88.) On the drive back, SB

recounted details of the date. (ECF No. 10-18 at 88.) The details of that date corresponded with the details of the date that SB testified Green drove her to.

The state did not object during Cousin's testimony and proceeded to cross-examine him. (ECF No 10-18 at 90-94.) It was only after a lunch break that the young prosecutor trying the case appeared with her supervisor and argued that Cousin's testimony was improper because the State was never told that Green intended to use Cousin as a *Denny* witness, there was "no *Denny* investigation, no *Denny* motion hearing, and no ruling on the admissibility of that evidence." (ECF No. 10-19; *see also* ECF No. 10-22 at 39-40.) Under Wisconsin law, "[w]hen a defendant seeks to present evidence that a third party committed the crime for which the defendant is being tried, the defendant must show 'a legitimate tendency' that the third party committed the crime; in other words, that the third party had motive, opportunity, and a direct connection to the crime." *State v. Wilson*, 2015 WI 48, ¶3, 362 Wis. 2d 193, 864 N.W.2d 52 (quoting *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984)).

Defense counsel argued that Cousin's testimony was not *Denny* evidence because he was not admitting to the crime. (ECF No. 10-19 at 16.) Absent knowledge that he was driving SB to a prostitution date, he lacked the mens rea to commit the offense that Green was charged with committing. (ECF No. 10-19 at 16.) In other words, Cousin was not saying that he committed the crime with which Green was charged (which would be *Denny* evidence) but that there was no crime. (ECF No. 10-19 at 17-18.) The circuit

court disagreed and found the testimony to be within the scope of *Denny* that should have been disclosed by the defense in advance of trial. (ECF No. 10-19 at 18-19, 30.) Finding that a curative instruction to disregard Cousin's testimony would be ineffective, it concluded the circumstances required a mistrial. (ECF No. 10-19 at 32.)

After the mistrial, Green filed a motion to dismiss the case, arguing that retrial would violate his constitutional right against double jeopardy. *Green*, 2023 WI 57, ¶17. The circuit court denied the motion, stating that Cousin's testimony had "blindsided" the State. (ECF No. 10-20 at 5.)

Green filed a petition for leave to appeal, which the Wisconsin Court of Appeals granted. Reversing the circuit court, the Court of Appeals concluded that retrial would violate Green's constitutional right against double jeopardy because there was no "manifest necessity" for the mistrial. *State v. Green*, 2022 WI App 19, 401 Wis. 2d 540, 974 N.W.2d 51, 2022 Wisc. App. LEXIS 238 (unpublished).

The State petitioned for review, which the Wisconsin Supreme Court granted. The Supreme Court then reversed the Court of Appeals, concluding that the trial court exercised sound discretion when it determined there was a manifest necessity for a mistrial. *Green*, 2023 WI 57, ¶42.

After the United States Supreme Court declined to take up the case, Green filed the present petition for a writ of habeas corpus under 28 U.S.C. § 2241. All parties have

consented to the full jurisdiction of a magistrate judge (ECF Nos. 3, 7) and the petition is ready for resolution.

2. *Denny*

*Denny* establishes only an admissibility standard for defense evidence that a known third-party committed the crime. It does not explicitly articulate any particular procedure a defendant must follow to alert the state or the court of his intention to present such evidence.

Although Cousin prepared an affidavit prior to his testimony, Green never provided it to the state. This non-disclosure did not violate any discovery rule because the state never made a discovery demand (which the circuit court commented is common in Milwaukee County). (ECF No. 10-22 at 37.) Nor did the court issue any pretrial order regarding the disclosure of *Denny* evidence, which, again, is not uncommon in Milwaukee County because, in the view of the circuit court judge, they are just ignored. *Green*, 2022 WI App 19; (ECF No. 10-22 at 37). And there apparently is no local rule or standing order in Milwaukee County Circuit Court requiring the pretrial disclosure of *Denny* evidence.

Moreover, it is uncertain if Cousin's testimony would have been within the scope of the State's motion in limine. *Green*, 2023 WI 57, ¶67 n.6 (A. Bradley, J., dissenting). The authority cited by the state in its motion dealt with the admissibility of

*unknown* third-party evidence; the state did not cite *Denny*, which dealt with *known* third-party evidence. *Id*.

Nonetheless, caselaw often refers to a pretrial "*Denny* motion," *see, e.g.*, *State v. Mull*, 2023 WI 26, ¶26, 406 Wis. 2d 491, 987 N.W.2d 707; *State v. Griffin*, 2019 WI App 49, ¶9, 388 Wis. 2d 581, 933 N.W.2d 681, or otherwise discusses defendants presenting *Denny* issues in pretrial proceedings, *see, e.g.*, *Griffin v. Hepp*, No. 21-C-540, 2022 U.S. Dist. LEXIS 63798, at *1 (E.D. Wis. Apr. 6, 2022); *Turner v. Pollard*, No. 13-CV-731-JPS, 2014 U.S. Dist. LEXIS 154456, at *7 (E.D. Wis. Oct. 31, 2014); *Johnson v. Pollard*, No. 06-C-357, 2008 U.S. Dist. LEXIS 14513, at *12-13 (E.D. Wis. Feb. 13, 2008); (*see also* ECF No. 10-19 at 3 (prosecutor noting the absence of a "Denny motion hearing"); *id*. at 19 (court noting there "would have been a Denny motion"); ECF No. 10-22 at 33 (prosecutor arguing there is "a legal requirement to give notice to both the court and the State and that a *Denny* hearing has to take place with evidence prior to any of that being admitted")).

The circuit court effectively held that this procedure—a defense motion to present *Denny* evidence and a pretrial determination by the court as to its admissibility—was required. (ECF No. 10-19 at 32 ("the State has the right to know about [*Denny* evidence] and the State has a right to respond to, and the court has a right to know about, and the court is required to make a ruling on before it comes out of a witness's mouth during the middle of the trial"); *see also id*. at 19 (court referring to the

need for a "Denny motion").) Before the court granted a mistrial, Green never argued that *Denny* did not require pretrial disclosure of other actor testimony; he argued only that Cousin's testimony was not *Denny* evidence.

The Wisconsin Supreme Court endorsed the circuit court's decision that a defendant must disclose *Denny* evidence before trial. *Green*, 2023 WI 57, ¶27. Thus, Green's failure to provide the State advanced notice of his intent to introduce *Denny* evidence deprived the state of the opportunity to adequately investigate the defense.

Following the mistrial, the circuit court eventually held that Cousin's testimony would be admissible under *Denny*. That conclusion was significant to the Court of Appeals, which held that, because Cousin's testimony will be admitted all the same in a retrial, there had been no manifest necessity warranting a mistrial. *Green*, 2022 WI App 19, ¶¶ 18-19.

However, as noted, in reversing the Court of Appeals the Wisconsin Supreme Court concluded that the circuit court exercised sound discretion in finding there was a manifest necessity for a mistrial. *Green*, 2023 WI 57, ¶27.

### 3. Habeas Law Generally

Federal habeas review of state court decisions generally falls under 28 U.S.C. § 2254. However, that statute applies only to claims brought by "a person in custody pursuant to the judgment of a State court …." 28 U.S.C. § 2254(a).

Double jeopardy claims may be asserted both pre-conviction, *Chestnut v. Milwaukee Cty. Circuit Court*, No. 23-CV-527-JPS, 2023 U.S. Dist. LEXIS 83529, at *6 (E.D. Wis. May 12, 2023), and post-conviction, *see Flint v. Carr*, 10 F.4th 786, 789 (7th Cir. 2021). Because Green has not been convicted, there is no state court judgment. He is on bond awaiting trial.

Bond is a restraint on liberty sufficient to constitute custody under the federal habeas corpus statutes, *Lefkowitz v. Newsome*, 420 U.S. 283, 291 n.8 (1975), but the absence of a judgment means that Green's claim arises under 28 U.S.C. § 2241 rather than § 2254, *see Jackson v. Clements*, 796 F.3d 841, 843 (7th Cir. 2015); *Soto v. Siefker*, 79 F.4th 715, 718 (6th Cir. 2023) ("Under 28 U.S.C. § 2241, however, a state pretrial detainee with a double-jeopardy claim may seek habeas relief before trial."); *Jacobs v. McCaughtry*, 251 F.3d 596, 597-98 (7th Cir. 2001) (citing, in part, *Palmer v. Clarke,* 961 F.2d 771, 774 (8th Cir. 1992) (stating that "federal district courts can entertain pretrial habeas petitions [under § 2241] in which the petitioner asserts [that] an impending state trial violates the Double Jeopardy Clause")).

The distinction is material because, following the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), § 2254 poses a much higher hurdle for petitioners. That the prospect of relief should vary so significantly based on the timing of the petition rather than the substance of the claims seems arbitrary. If Green's pending retrial proceeded and was completed before this court resolved his petition, an acquittal

would moot his petition. *Jackson*, 796 F.3d at 843. If he were convicted and sentenced, his petition would then be subject to the limitations imposed by § 2254. *See* Saulsberry v. Lee, 937 F.3d 644, 647 (6th Cir. 2019).

But as it stands, the general non-AEDPA standard of review applies to Green's claim. To be entitled to relief, Green must show that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The court shall "dispose of the matter as law and justice require." 28 U.S.C. § 2243.

4. Analysis

"Unlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Arizona v. Washington*, 434 U.S. 497, 505 (1978). Retrial following a mistrial does not violate the Fifth Amendment prohibition of double jeopardy when there was manifest necessity for the mistrial. *Flint*, 10 F.4th at 789.

The quintessential example of manifest necessity for a mistrial is "a genuinely deadlocked jury." *Washington*, 434 U.S. at 509. On the opposite end of the spectrum, it is well-established that there is no manifest necessity when the prosecution seeks a mistrial because it fears that its evidence will prove insufficient to convict. *Id.* at 507. Between these extremes, the existence of a manifest necessity for a mistrial is assessed in the context of each particular trial. *Illinois v. Somerville*, 410 U.S. 458, 463 (1973).

In reviewing a trial court's decision to grant a mistrial, the reviewing court affords the trial court's decision "special respect." *Washington*, 434 U.S. at 510. "As a general rule, a reviewing court is charged with determining whether the trial court's decision that a mistrial was justified by manifest necessity was an abuse of discretion." *Williams v. Bartow*, 481 F.3d 492, 500 (7th Cir. 2007). "However, within this general standard, varying degrees of scrutiny are applied depending on the nature of the precipitating event." *Id.*

Importantly, "manifest necessity" does not mean that the trial court had no other plausible option other than to grant a mistrial. *Washington*, 434 U.S. at 506. Manifest necessity may exist even if some judges would not have declared a mistrial under the circumstances. *Id.* at 511. "Nevertheless, despite that high degree of deference, a reviewing court still must satisfy itself that the trial court exercised its 'sound discretion' and acted 'responsibly and deliberately' in declaring a mistrial." *Williams*, 481 F.3d at 500 (quoting *Washington*, 434 U.S. at 516).

Green argues that, because the circuit court subsequently found that Cousin's testimony would be admissible under *Denny* at Green's retrial, there was never any error to remedy and thus no manifest necessity for a mistrial. (*See, e.g.*, ECF No. 11 at 25.) But the court's concern was not that potentially inadmissible evidence had been presented to the jury or that the jury's impartiality was undermined. Rather, what led to the mistrial was the court's conclusion that the state had been deprived of the

opportunity to investigate and rebut Cousin's testimony because Green had not disclosed it before trial. *See Green*, 2023 WI 57, ¶27 ("The court ordered a mistrial because 'the State has the right to know about and … respond to' testimony implicating a third-party perpetrator 'and the court is required to make a ruling on it before it comes out of a witness' mouth during the middle of the trial.'"); (*see also* ECF No. 10-19 at 3 (prosecutor summarizing the problem as: "The State has had no notification of a Denny, there's been no Denny investigation, no Denny motion hearing, and no ruling on the admissibility of that evidence."); ECF No. 10-19 at 29 (court commenting that going forward with a trial "would also be unfair to the State.")). The problem was procedural, not evidentiary.

Although Green disputes that Wisconsin law required pretrial disclosure of Cousin's testimony (ECF Nos. 11 at 26; 19 at 4-5), the state court decisions that Cousin's testimony was *Denny* evidence and that Green was required to disclose it prior to trial are matters of state law beyond the scope of this court's review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

The circuit court did not act "precipitately," "irrationally[,] or irresponsibly" in concluding that a mistrial was necessary to remedy Green's failure to provide the state with notice of the *Denny* evidence. *See Washington*, 434 U.S. at 506. The court acted

"deliberately and responsibly" by allowing the state and Green to fully argue their positions and considering the alternative remedy of instructing the jury to disregard Cousin's testimony. *See id.* at 515-16.

The court exercised "sound discretion" in concluding that instructing the jury to disregard would be insufficient and ineffective and that there was no alternative to a mistrial. The court appropriately found that it was unreasonable to expect that the jury would be capable of disregarding Cousin's testimony, even if instructed to do so. (ECF No. 10-19 at 22, 29.)

In fact, striking Cousin's testimony would only have created a different problem. If Green's attorney's failure to provide proper notice deprived Green of the chance to present this powerful evidence that someone else had driven SB, that would appear to support a claim of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). A court is not required to continue a trial with a built-in error that would likely result in the reversal of any resulting conviction on appeal. *See Somerville*, 410 U.S. at 464.

If the court had appeared likely to strike Cousin's testimony, Green undoubtedly would have preferred a mistrial whereby on retrial he could comply with his disclosure obligations and seek the admission of the evidence. The only reason Green would have opposed a mistrial under such circumstances would be if he believed the jury would not

12

Case 2:24-cv-00295-WED   Filed 09/25/24   Page 12 of 14   Document 20

have actually disregarded the evidence, in which case Green's opposition would have underscored the ineffectiveness of striking the testimony as a remedy.

Even now Green does not argue that there was any other means to remedy his failure to provide the state with notice of Cousin's testimony. Instead, his argument is that there was no manifest necessity because the court later concluded that Cousin's testimony was admissible under *Denny*. But, again, this argument misunderstands what was the "bell" that the circuit court sought to "unring." *Cf. Green*, 2023 WI 57, ¶44 (A. Bradley, J., dissenting).

## 5. Conclusion

Particularly in light of the "great deference" the court must afford the circuit court's decision, *Washington*, 434 U.S. at 510, manifest necessity existed for a mistrial, and therefore Green's retrial is not barred by the Sixth Amendment. The court must deny Green's petition for a writ of habeas corpus.

Because the court is denying Green's petition for a writ of habeas corpus, it must consider whether to grant a certificate of appealability. The court may grant a certificate of appealability only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009).

Of the now 12 judges that have considered Green's claim, six (three judges of the court of appeals, *Green*, 2022 WI App 19, and three Wisconsin Supreme Court justices in

dissent, *Green*, 2023 WI 57), have concluded that Green's retrial would violate the Sixth Amendment. Against that backdrop, the court finds itself compelled to conclude that Green has made a substantial showing of the denial of a constitutional right. Therefore, the court will grant a certificate of appealability as to the sole claim he raised in his petition—that his retrial will violate the Sixth Amendment.

**IT IS THEREFORE ORDERED** that Green's petition for a writ of habeas corpus is **denied** and this action is **dismissed**.

**IT IS FURTHER ORDERED** that Green is issued a certificate of appealability as to his claim that his retrial would violate the Sixth Amendment. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 25th day of September, 2024.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge